AT CHAMBERS, July 12, 1849.    Before *Willard*, Justice.

In the matter of HIRAM CARPENTER and JOSEPH L. SNOW.

The office of commissioner of loans is a *county office*, within the meaning of section 2 of article 10 of the constitution of 1846.

The mode of appointment of commissioner of loans is not provided for in the constitution, except in the same section which declares that such county officers shall be elected by the electors of the respective counties, or appointed by the boards of supervisors or other county authorities, as the legislature shall direct.

The power of appointment by the governor and senate, which existed with respect to county officers, under the former constitution, is by necessary implication taken away by the constitution of 1846.

THE above named Hiram Carpenter and Joseph L. Snow presented a petition to WILLARD, justice, at chambers, under 1 *R. S.* 124, § 50, *et seq.*, for an order, that George G. Scott and Cyrus Perry, late commissioners of loans for Saratoga county, deliver over to the petitioners the books and papers in their custody, appertaining to the said office. The petitioners alledged that, being freeholders of said county, they were, on the 3d day of April, 1849, appointed by the governor, with the advice and consent of the senate, commissioners of loans for the county of Saratoga, in the place of George G. Scott and Cyrus Perry, whose term of office, as such commissioners of loans, had previously thereto expired. That a commission to that effect, signed

---

In the matter of Carpenter.

---

by the governor, and attested by the secretary of state, was forwarded to the clerk of Saratoga county, and was received by him on the 6th of April thereafter ; that the petitioners, within 15 days from the time of receiving such notice, executed the bond required by statute, and took the oath of office, and caused the said bond to be approved and filed, and on the 1st Tuesday of May, 1849, entered upon the duties of their office ; that certain books and papers appertaining to the said office were still in the possession of Scott and Perry, who refused to give them up to the petitioners.

It was not denied on the part of the defendants, that their official term had expired before the petitioners were nominated by the governor to the senate, but they insisted, that under the constitution of this state, the governor and senate had no right to make the appointment, and that the defendants were entitled to hold the office under 1 *R. S.* 117, § 9, until a successor in such office should be duly qualified ; that is, in the present case, until the legislature should determine the manner in which such officers should be elected or appointed, and the said office should be thereafter legally filled. They also insisted that the petitioners had not taken the requisite steps to qualify themselves for the discharge of the duties of said office.

*McKean & Meeker*, for the petitioners.

*G. G. Scott*, for the defendants.

Willard, J.   The 2d section of the 10th article of the constitution of 1846, contains these words : " All *county officers* whose election or appointment is not provided for by this constitution, shall be elected by the electors of the respective counties, or appointed by the board of supervisors or other county authorities, as the legislature shall direct ;" and the 4th section of the same article requires the legislature to prescribe by law the time of electing all officers named in that article. The appointment of commissioners of loans is not provided for in the constitution, and the legislature have failed to comply with this

In the matter of Carpenter.

requirement, so far at least as relates to the office now in controversy, and the question is, whether, by reason of such failure, the former mode of appointment under the late constitution, by the governor and senate, continues, or whether the incumbents may hold over, under 1 *R. S.* 117, § 9, until the legislature execute the duties enjoined on them by the constitution.

On the argument, it seemed to be conceded, that if " commissioners of loans" are *county officers*, within the meaning of the clause of the constitution just cited, the petitioners could not be appointed by the governor and senate. The first inquiry, therefore, is whether the office in question is a county office.

The office of commissioner of loans was created by the act entitled " an act authorizing a loan of moneys to the citizens of this state," passed April 11, 1808. That act authorized a loan " to the counties within this state," the counties composing the southern district excepted ; and the third section empowered the person administering the government, by and with the advice and consent of the council of appointment, to nominate and appoint two reputable freeholders, resident in the city of New-York, and in each of the other counties of this state, to be commissioners for loaning money in the city and county of New-York, and each of the said counties in which they should be appointed." Other sections required the commissioners so appointed to take an oath of office and to give a bond to the people of the state, with sureties to be approved by certain county officers, conditioned for the true and faithful performance of their office and duties. The commissioners were required to loan the money to inhabitants of their respective counties, and to receive security by mortgage on improved lands in the same counties. And by the 12th section, it is enacted, that if any commissioners for loaning money *should remove out of the county*, die, or neglect or refuse to perform his duties, &c. " the person administering the government might appoint some other reputable freeholder, *resident in such county*, who should hold his office until the next meeting of the council of appointment.

The convention of 1821 abolished the council of appointment, and the constitution then adopted vested the appointing

In the matter of Carpenter.

power in most cases, in the governor with the consent of the senate. The 15th section of article 4, is in these words: "All officers heretofore elective by the people, shall continue to be elected ; and all other officers whose appointment is not provided for by this constitution, and all officers whose offices may be hereafter created by law, shall be elected by the people or appointed, as may by law be directed." Under this provision, the legislature, in 1823, vested the power of appointment of commissioners of loans in the governor and senate. (*Laws of* 1823, *p.* 343.) This law, by its terms, expired in three years after its passage ; but by the act of Feb. 25, 1826, it was extended three years longer, (*Laws of* 1826, *p.* 44,) and was then incorporated into the revised statutes, without limitation as to time. (1 *R. S.* 114, § 15.) Thus the mode of appointment of the commissioners became changed, leaving the act in other respects unaltered.

The loan of the 14th of March, 1792, was created in pursuance of an act of that date. (*See* 2 *Greenl.* 404.) This was usually denominated the new loan, to distinguish it from the loan of 1786, which has since been called in. The loan officers under the act of 1792, are spoken of in the act, as officers for the county for which they were appointed. They were appointed by the judges of the court of common pleas and supervisors of the county, and were required to be freeholders and inhabitants of the county, and forfeited their offices on removing from the county. Their accounts were required to be annually examined by the judges of the court of common pleas and supervisors, and any deficiency which might arise from failure of title of the mortgagors, or from the premises mortgaged not being adequate to pay the amount due, was required to be assessed and levied upon the county. Thus the county was made responsible for the entire loan.

By the act of April, 1832, (*Laws of* 1832, *p.* 178,) the duties of the office of loan officer under the acts of 1786 and 1792, were transferred to; and vested in the commissioners of loans, and the office of loan officer was thereafter abolished. The loan of 1786 was required to be paid in, and the accounts closed, on or

In the matter of Carpenter.

before the first of December, 1832. Since that time, nothing remains of these early loans but the loan of 1792 and 1808, the whole of which were vested in the commissioners of loans.

These officers have always been treated as county officers. They have been required to keep their office in the county, to loan moneys only to inhabitants of the county, to be themselves freeholders and residents of the county, in order to be eligible to the office, and to forfeit their office on removing from the county. They are described in the several acts by which they were created, as county officers. They were required, with respect to the loan of 1792, to account annually to the county, through the judges and supervisors, and the county was responsible for the money loaned ; and this liability is still preserved by the consolidation act of 1832. In the revised statutes, the commissioners of loans under the act of 1808, are treated as administrative county officers, (1 *R. S.* 98 § 4, *p.* 102, § 16,) and their appointment, as before stated, vested in the governor and senate. (1 *R. S.* 114, § 15.) The loan officers under the act of 1792, were placed in the same class, but their appointment and removal were vested in the supervisors alone, two thirds of whom were required, to make an appointment or removal. The act of 1832 before cited, in effect abolished the last mentioned offices, and vested their duties in the commissioners of loans. Such was the law in relation to these officers, at the time of the formation of the present constitution.

The criterion by which to determine what is intended by the term " county officer," in the constitution, article 10, § 2, was incidentally decided by Edmonds, J. in the *matter of Whiting*, (2 *Barb. S. C. Rep.* 517.) He considered those to be county officers who were elected or appointed for a county, and were required to reside in and perform their duties in the county. And the senate judiciary committee of 1847, (*See Doc. of the Senate, No.* 61, *p.* 5, *majority Report*,) gave a similar definition to the same term. That committee reported against the power of the governor and senate to appoint surrogates and notaries public, even to fill vacancies, and their report was sustained by the majority of the senate. Under these definitions, the office

---

In the matter of Carpenter.

---

in question is clearly a county office. It has marks of locality which can not be mistaken. (1 *R. S.* 122, § 34, *sub.* 4. *Id.* 364, *et seq.*)

But it is urged that the commissioners of the code, in their first report to the legislature, have proposed a new designation of public officers, which will comprise the office in question under the head of "local state officers," and that thus the mode of appointment will not be affected by the constitution. (*See Code*, § 222 *and notes.*) On this it may be remarked 1st. That the code, as reported, has not yet received the sanction of the legislature. It is merely the recommendation of the commissioners. 2d. Under their designation of local state officers, the commissioners of the code, in a note to that section, embrace the commissioners for loaning the "United States deposit fund ;" an office created by the act of April, 1837. (*Laws of* 1837, *p.* 129.) Those officers are different from the "commissioners of loans" now under consideration, although some of their duties are analogous. But 3rd. It is believed not to be competent for the legislature to increase their powers, or to relieve themselves from duties, by changing the definition of an office, which, at the adoption of the constitution, had a well known and definite signification.

If the office of commissioner of loans was a county office at the adoption of the constitution, as I have attempted to show, the second section of the tenth article has, by direct and necessary implication, taken from the governor and senate the power of appointment. By prescribing that they shall be elected by the electors of their respective counties or appointed by the board of supervisors or other county authorities, as the legislature shall direct, the constitution virtually excludes every other mode of appointment, and thus leaves the incumbents in office, or the office vacant, until the legislature shall direct a new mode of appointment, and successors, under such mode of appointment, have become duly qualified. Such, it seems to me, is the reasonable construction to be put upon the constitution and our legislation on this subject.

This construction is in itself reasonable, and harmonizes with

In the matter of Carpenter.

other parts of the system. The old incumbents can be at once ousted, whenever the legislature carry out the mandate of the constitution. It rests, therefore, with that body, whether the period shall be long or short. It was never intended that the legislature should have the power, by failing to do their duty, to continue the former mode of appointment during their pleasure. If the position contended for on the part of the petitioners be sound, it is in the power of the legislature to defeat altogether this branch of the constitution—a branch which was designed to break up the central appointing power, with respect to county officers—and to make them elective by the people or by the local authorities. It cannot be expected, that the legislature can, at a single session, execute all the various powers contemplated by the constitution. No imputation upon the good faith or integrity of that body is intended by any of the foregoing observations. All that is insisted on is, that so long as they fail, for any cause, to prescribe a mode for the election of county officers by the people or the local authorities, the old incumbents must continue to discharge their duties, or the office must remain vacant.

The office in this case, and the mode of appointment, were both created by the statute; and had the constitution been silent on the subject, both the office and the mode of appointment would have remained. But the constitution has changed the mode of appointment, as has been shown, and taken it from the governor and senate. The constitution of 1821 ceased to exist when the present constitution took effect. If the governor and senate can appoint commissioners of loans, it must be under a constitution that has passed away. The original act creating the loans of 1792 and 1808 contemplated a different mode of appointment, which was abrogated by the constitution of 1821. The legislation which conferred this power upon the governor and senate, was the offspring of that constitution, and ceased to be operative when that instrument ceased to be the organic law. We must look to the constitution of 1846, or some subsequent legislation, for the authority to appoint commissioners of loans, or other county officers, by the governor

and senate; and if none can be found, as we have seen none such exists, the appointment of the petitioners is a nullity.

It has been assumed, that, if the appointment of the petitioners is a void act, the old commissioners continue in office until the vacancy can be legally filled. Such is my own impression, from the cursory examination I have been able to give the subject. But this question is not necessary to be decided on this application. If the petitioners are not entitled to the summary aid of a judge, to require the delivery to them of the books and papers of the office, under the provisions of the revised statutes, it can not become material to inquire whether the defendants can legally hold over under the act, 1 *R. S.* 117, § 9, or not, and I do not propose to discuss or decide that question.

It has been urged on the part of the defendants that even if the governor and senate possess the power of appointment which is claimed by the petitioners, the latter have not, within the time required by law, executed such bond with sureties properly approved, and taken such oath of office, as entitles them to the summary aid provided by the statute. (1 *R. S.* 124, § 50 *et seq.*) I have not deemed it necessary to examine very closely this branch of the case. If the petitioners have no title to the office by reason of the constitutional impediment which has been considered, the other objections are quite superfluous. Even if a *reasonable doubt* existed as to the title of the commissioners to the office, a judge at chambers ought not in this summary way, to dispose of the question. This proceeding was only intended to provide for cases where the applicant had a *prima facie* title to the office, and the defendants were clearly and incontestibly in the wrong. It is not the mode provided by law for determining the *title* to an office. That remedy now is by the substitute for the writ of quo warranto, in the code of procedure, §§ 428, 447. Mr. Justice Edmonds, in the *matter of Whiting*, (2 *Barb. S. C. Rep.* 518,) in delivering his judgment on a similar application, very properly observes " that if it could be made to appear that the governor and senate had no right under the constitution, to make an appointment, the complainant's *prima facie* right to the

possession would necessarily fall to the ground, and his application must be dismissed." In the *matter of Hodgkinson*, Kent, Circuit Judge, in a proceeding under this same statute, held "that the legislature never intended that a judge should exercise his power to enforce the delivery of books and papers against an officer *de facto, where the title of the applicant to the office is questionable. He must have a prima facie case, free from all reasonable doubt.* (5 *Hill*, 633, *in note.*) I fully concur in this opinion of the learned judge. This doctrine is also substantially asserted by the supreme court, in *The People* v. *Stevens*, (5 *Hill*, 616.)

The conclusions at which I have arrived may be summed up as follows: First. The office of commissioner of loans is a county office, within the meaning of § 2 of article 10 of the present constitution. Second. The mode of appointment of that officer is not provided for in the constitution, except in the same section, which declares, that such county officers shall be elected by the electors of the respective counties, or appointed by the boards of supervisors or other county authorities as the legislature shall direct. Third. The power of appointment by the governor and senate, which existed with respect to county officers, under the late constitution, is by necessary implication taken away; and, consequently the petitioners show no *prima facie* title to the office, and their application must be denied.

Motion denied.