IN THE MATTER OF PROVING THE ALLEGED WILL AND TESTAMENT OF CHARLES HATHAWAY, DECEASED.

*Power of Supreme Court to appoint acting surrogate — Chap. 320 of 1830 — not repealed by Constitution of 1846 — Public officer — Constitution, article 6, § 8 — County officer — Constitution, article 10, § 2.*

Chap. 320 of 1830, authorizing the chancellor, in case no person was capable of acting as surrogate under the provisions thereof, to appoint some suitable person to act as surrogate, was not repealed by the adoption of the Constitution of 1846, but is still in force; and the power of appointment therein given to the chancellor is now vested in the Supreme Court. (LEARNED, P. J., dissenting.)

The person so empowered to act as surrogate is not a public officer within the meaning of section 8 of article 6, declaring that the justices of the Supreme Court "shall not exercise any power of appointment to public office." (LEARNED, P. J., dissenting.)

Nor is he a county officer within the meaning of that term, as used in section 2 of article 10, which provides for the election and appointment of such officers. (LEARNED, P. J., dissenting.)

APPEAL by Jane Wright, a sister and heir at law of the above named deceased, from an order of the Special Term of this court, denying a motion made by her to set aside and vacate an *ex parte* order appointing an acting surrogate in this proceeding.

The testator was an inhabitant of the village of Delhi, Delaware county, and died in January, 1876, the owner of an estate valued at $75,000 or upward, and leaving an alleged last will and testament, in which Rebecca Y. Bowne, Daniel T. Arbuckle and Horatio N. Buckley were named as executrix and executors.

The county judge and surrogate of Delaware county was disqualified from acting in the matter of the probate of the alleged will, by reason of his relationship by affinity to the executor Buckley, and the district attorney of the county, Daniel T. Arbuckle, was one of the executors, and consequently debarred from acting in his stead.

On a petition by the executrix and executors showing these facts, this court, at an adjourned Special Term held by Mr. Justice MURRAY, February 16, 1876, made the order appealed from *ex parte*, whereby Harvey F. Davidson, of Delhi, N. Y., was appointed to act as surrogate in the matter so long as the disability of the surrogate should continue, and a commission directed to be issued to him accordingly.

This order was made under the provisions of chapter 320 of the Laws of 1830, which, after enacting among other things, that when the surrogate should be precluded from acting in any case by reason of interest, relationship, etc., the first judge of the county should be vested with all the powers and authority of the surrogate in such case, continues as follows:

" SEC. 21. The same causes which preclude the surrogate from acting shall apply equally to the first judge; and when both shall be thus incapable of acting, and when the office of both shall be vacant, the district attorney of the county, if not incapacitated by the same causes, shall have the same powers as are given by the preceding sections to the first judge, and shall proceed in the same manner. When there shall be no person capable of acting under the provisions of this title, the chancellor, upon petition, shall issue

a commission to some suitable person, empowering him to act as surrogate in the premises."

No notice of the application for the order was given to the appellant or to any of the other heirs at law or next of kin, nor did she or any of them have any knowledge of the appointment until long after it was made.

Citations to appear before the acting surrogate upon the application for the probate of the will were duly issued and served upon the heirs at law and next of kin, including the appellant. Upon the return day she appeared by her attorney, and after several adjournments granted upon her application, a hearing was finally had on the 24th day of April, 1876, and an order made admitting the will to probate. Subsequently letters were duly issued to the executrix and executors, all of whom duly qualified. On the 27th day of June, 1876, this motion was made to set aside the order appointing the special surrogate, on the ground that the act of 1830 had been repealed by the adoption of the Constitution of 1846.

*D. D. Niles*, for the appellant.

*Davis & Arbuckle*, for the executors, respondents.

BOARDMAN, J.:

Prior to the Constitution of 1846 the act of 1830 (chapter 320, § 21; 2 R. S. [Edm. ed.], 80, § 54) was in full force. It was passed to prevent a failure of justice, and in the events therein contemplated was indispensable to the settlement of estates and determination of the rights of the parties interested therein. Indeed without the aid of this statute the rights of the parties interested would have been in abeyance, and no one could lawfully take possession or care of the property. It is now to be decided whether a law having such a benign purpose has been abrogated by the Constitution of 1846, or impliedly repealed by any statute since that date.

I do not think the commissioner provided for by the act of 1830 is in any sense a public officer; his position is very like that of a referee to try a cause, a commissioner to take an inquisition or testimony. Such persons are not public officers; they are rather officers of the court, appointed for a specific purpose in a single case or matter, and having no power outside of the subject committed to

them. Such commissioners do not therefore come within the second section of article 10 of the Constitution. Hence section 8, article 6 of the Constitution does not refer to such appointments when it says the judges " shall not exercise any power of appointment to public office." The provision of section 15, article 6, permitting the legislature to provide for the election of local officers to discharge the duty of surrogates has no application to this case, since Delaware county has never applied for the passage of the law. What " might have been," therefore, does not affect what is. There is nothing in the amendments of the Constitution since 1846 which affects the question under consideration. If, then, there is nothing in the act of 1830 repugnant to the Constitution of 1846, so far as this appointment is concerned, it is not abrogated by that Constitution. (Art. 1, § 17, Constitution of 1846.) In my opinion there is no inconsistency between the statute and the Constitution.

By the Constitution (art. 1, § 17) and the judiciary acts (Laws of 1847, chaps. 280, 470) the powers and duties of the chancellor were devolved upon the Supreme Court and its justices. The power in question could therefore be properly exercised by a justice of the Supreme Court at Special Term, unless the act of 1830 touching this appointment has since been repealed by implication. It is conceded it has not been repealed by direct terms. The judiciary act (§ 32 of chap. 470) simply changes the official titles contained in the act of 1830 to correspond with those given by the Constitution. It does not profess to repeal the act of 1830, nor does it have such effect except in the respects in which it is inconsistent therewith. The same is true of the act of 1871 (chap. 859, § 3). Neither of these acts, directly or by implication, repeal the clause of the act of 1830 authorizing a commissioner to be appointed when there is no officer in existence who can take the probate of a will. Repeal by implication is not favored; it can never occur except where the inconsistency and repugnancy of the two acts are plain and unavoidable. ( *Wallace* v. *Bassett*, 41 Barb., 92 ; Potter's Dwarris on Stat., 155, etc., and note 5, and cases cited ; *Daviess* v. *Fairbairn*, 3 How. [U. S.], 636, 644 ; *Goldson* v. *Buck*, 15 East, 372.)

The authorities do not, in my judgment, justify the conclusion that the acts of 1847 or 1871 were intended to, or by reason of incon-

sistency did in fact, repeal the power given by the act of 1830 to appoint a commissioner to take the probate of a will when no other mode existed under the law whereby it could be done.

The various treatises on practice and revisions of the statutes since 1847 contain the law of 1830 in respect to appointment of commissioner as still in force. (2 R. S., 81, § 54 [Edm. ed.]; 3 id., 167, § 71 [5th ed.]; 3 id., 87, § 86 [6th ed.]; Redf. Sur. Pr., p. 4; Dayton's Sur. P., 46; 3 Fay's Dig., 827.)

It is true this is not very conclusive evidence that the statute of 1830 was not repealed; but it presents the ideas of the various revisers and elementary writers upon that subject. As these treatises and revisions of the statutes have been the reliance of practitioners as well as officers, it is fair to assume that commissioners have been appointed for nearly twenty years past, as in this case, whenever the emergency arose. Under the authority thus given estates have been administered and settled, real estate sold and conveyed and conflicting rights determined. If it shall now be held that such action was a nullity, that the law authorizing it has been repealed, and that courts and officers were all acting without jurisdiction, and hence were trespassers in all administrative acts, the consequences may be more serious than can now be apprehended. Besides it leaves this estate, of considerable magnitude, and possibly others similarly situated, to await the slow and doubtful process of legislation, before any person can be legally authorized to take possession and care of it. The death, resignation or expiration of term of the present county judge or district attorney, and the succession of a competent officer instead would relieve the embarrassment, but such contingency is too uncertain to be of value. Under such a state of facts courts should be slow to disregard so harmless and beneficent a statute, unless compelled to believe it no longer exists.

If the court had jurisdiction there is no difficulty in the matter of notice. The appellant was guilty of gross laches in submitting to such objectionable order for more than four months after it was granted. During this time she attended the probate of the will and permitted executors to be appointed and to assume their duties. By reason of such neglect and the consequent complications, she ought not now to be heard to object to the want of notice.

This view is strengthened in that no reason is assigned against Mr. Davidson as a commissioner, nor is a suspicion of unfairness or impropriety suggested against him. The objection is therefore purely technical, and the only consequences of respecting it would be mischievous and unprofitable.

For these reasons I think the order appealed from should be affirmed, with costs.

BOCKES, J., concurs.

LEARNED, P. J. (dissenting):

The office of surrogate existed before the Constitution of 1821, but is not mentioned therein. The surrogate, therefore, was to be elected or appointed, as might by law be directed. (Const. 1821, art. 4, § 15.) By the Revised Statutes, following the statute of 1823 (chap. 70, § 7), surrogates were to be appointed by the governor, with the consent of the senate. (1 R. S. [2d ed.], m. p., 107 § 15 [9].) It was also provided that, if the surrogate were disqualified, the first judge of the county should "be vested with all the powers and authority of the surrogate in relation to the proof of any such will," etc. (2 R. S. [2d ed.], m. p., 79, § 49.) In such case he was to possess all the powers and authority of a surrogate, and his orders and decrees in like manner were subject to appeal. (§ 51.) If both the surrogate and first judge were disqualified, and when their offices were vacant, the district attorney was to have the same powers as by the previous sections were given to the first judge. And when there was no person "capable of acting under the provisions of this title, the chancellor, upon petition, shall issue a commission to some suitable person empowering him to act as surrogate in the premises." (§ 54, as amended by Session Laws 1830, chap. 320, § 20.) Thus this appointing power applied both to a case of disqualification and *to a vacancy* in the office of surrogate, first judge and district attorney. While the law stood thus the Constitution of 1846 was adopted. This abolished the office of chancellor, giving law and equity jurisdiction to the new Supreme Court created thereby. (Art. 14, § 8; art. 6, § 3.) It abolished the office of judge of the County Court and of surrogate — except as therein otherwise provided. (Art. 14, § 8.)

It directed the election of a county judge in each county, except New York, and declared that he should perform the duties of surrogate. It declared that, in certain counties, the legislature might provide for the election of a separate officer to perform the duties of surrogate. (Art. 6, § 14.)

It further declared that, on the application of supervisors, the legislature might provide for the election of local officers, not to exceed two in any county, "to discharge the duties of county judge and of surrogate, in cases of their inability or of a vacancy." (Art. 6 § 15.)

It declared that all county officers * * * should be elected by the electors of the counties, or appointed by the supervisor or other county authorities; that all other officers, not provided for thereby, should be elected or appointed as the legislature should direct. (Art. 10, § 2.)

It declared that the justices of the Supreme Court *should not exercise any power of appointment* to public office. (Art. 6, § 8.)

The question now is, whether the power of appointing an acting surrogate, under the statute of 1830, survived these changes.

I think it did not.

First. The only power given to the Supreme Court is "general jurisdiction in law and equity." There is nothing in the Constitution which retains to that court any power which belonged to the chancellor, unless it be embraced in the description, "jurisdiction in equity." It is plain that the appointment of an officer to hold a Surrogate's Court was not an exercise of equity jurisdiction. The person appointed was not, like a master in chancery, an officer of the Court of Chancery. He was, *pro tempore*, a surrogate holding an independent court. In appointing such a person the chancellor exercised not a judicial, but an administrative function — the same which the governor exercised when he appointed the permanent surrogate. The office of chancellor, with its functions, was abolished; while equity jurisdiction was given to the Supreme Court. The judiciary act (Session Laws 1847, chap. 280, § 16), giving to the justices of the Supreme Court the powers and jurisdiction of the chancellor and other officers, qualified the language by adding, "so far as consistent with the Constitution and provisions of this act." And the amendatory act of the same year

(chap. 470, § 32) made provision for the case of disability of a surrogate.

Second. Section 8 of article 6 absolutely prohibited justices of the Supreme Court from exercising any power of appointment to public office. This provision seems to apply to this very power, for it can hardly be said that the office of an acting surrogate, especially *when the appointment is to fill a vacancy*, is not a public office.

It is true, that article 6, as adopted in 1869, section 10, which corresponds with section 8 in the Constitution of 1846, omits this prohibition. And it is possible, therefore, that in some cases, a power of appointment may now be given by the legislature to the justices of the Supreme Court. But since the adoption of that article no legislation on this point has been had. And a law which was practically annulled by the Constitution of 1846, and had remained so for more than twenty years, is not to become in force again by the removal of this restriction. No new power is conferred thereby on the Supreme Court.

When the legislature, in the judiciary act, gave to the justices of the Supreme Court the power and jurisdiction of the chancellor, not inconsistent with the Constitution, they did not give to those justices this power of appointment, because this power *was* inconsistent with the Constitution. The power, therefore, was not then given to the Supreme Court, and it has never been given since. Indeed as will be shown farther on, every enactment of the legislature on this subject is inconsistent with such an appointing power.

Third. The whole scope of the Constitution of 1846 is inconsistent with this power. Article 6, as adopted in 1869, does not differ in the points important to this case from the original article. This Constitution generally took away all appointing power and made officers, judicial and other, elective. When such is the general intent of that instrument it needs strong reasons to show that an appointing power previously existing was retained.

1. The Constitution required the election of surrogates. (Art. 6, § 14, or § 15 of the amended act.) It further required that county officers, whose election or appointment was not thereby provided for, should be elected by electors, or appointed by county authori-

ties. (Art. 10, § 2.) That such acting surrogate is an officer seems indisputable, for he is to exercise a judicial function. That he is a *county* officer is, I think, plain. In harmony with this view, such an acting surrogate has been held entitled to the same salary with the surrogate, payable from the same source. (*In re Wolford*, Albany Special Term, 1876.)

He takes the place of one who is undoubtedly a county officer, and his jurisdiction is confined to the county limits. (See *In re Carpenter*, 7 Barb., 30.) For it is important to notice that the statute, under which this power is claimed (2 R. S. [2d ed.], m. p., 80, § 54), applies not merely to a temporary disqualification of the surrogate, first judge and district attorney, but includes the case of a *vacancy* in those three offices: " When there shall be no person capable of acting under the provisions of this title, the chancellor," etc. And there could be no. doubt that in case of a vacancy of those three officers, the person appointed by the chancellor would hold a county office. That the Supreme Court should possess the power of appointing to a county office can hardly be claimed.

2. The Constitution authorizes, in case of disability or vacancy in the office of county judge and surrogate, the election of not more than two "local officers" in each county. (Art. 6, §§ 15, 16.)

This is a plain indication that in no other way were disabilities or a vacancy to be provided for. And furthermore, this clause is inconsistent with the section (54) above cited. For suppose that, in any county, the legislature has authorized and the people have elected two "local officers." Now if section 54 be still in force, then notwithstanding such election of "local officers," the Supreme Court is to appoint, whenever the surrogate, first judge (county judge) and district attorney are disqualified. Because they are the only persons capable of acting "*under the provisions of that title.*" This unreasonable result shows that section 54 cannot be held to have been operative after the Constitution of 1846 went into effect.

3. The legislature by their acts contemporaneous and subsequent, have given a construction to the Constitution inconsistent with the supposition that the legislature recognized this power of appointment as in force. This construction "has almost the force of a judicial exposition." (*People v. Dayton*, 55 N. Y., 367.) Thus, after the adoption of the Constitution, in the amendment of the

judiciary act (Sess. Laws, 1847, chap. 470, § 32), the legislature authorized the county judge and the district attorney to act in case of disqualification of the surrogate, and the want of any "local officer." This was substantially a re-enactment of a part of the former provisions, which are above mentioned. But they omitted any provision for the appointment of an acting surrogate. Now if the former statute was still in force there was no need of this re-enactment; and, at any rate, the omission of this appointing power in an act designed to provide for such contingencies, shows that it is not intended to be in force.

So again, after the passage of the new article 6 of the Constitution, some further legislation as to the judiciary became necessary. Accordingly in the Session Laws of 1871 (chap. 859, § 8), provision is again made for the same case of disqualification of the surrogate and of the county judge. The district attorney is authorized to act, and his compensation is provided for. But no mention is made of any right to appoint an acting surrogate. (See *Holmes* v. *Smith*, 10 S. C. N. Y. [3 Hun], 413.)

We have, then, two enactments by the legislature of a law to provide judicial officers who shall act, in case the surrogate is disqualified, or in case his office is vacant. These enactments are on the same subject with the sections above referred to (2 R. S. [2d ed.], m. p., 79, §§ 49 to 54), and are analogous to those sections. In fact there is no difference, except that the "local officer" is mentioned and that the county judge is named instead of the first judge of the county. In neither of these re-enactments (for such they are) is any authority given to the Supreme Court, or to any one, to appoint an acting surrogate. The inference seems to me irresistible that the legislature intended that no such authority should exist.

And this inference is the more forcible when we consider that article 6, adopted in 1869, omitted (as before remarked) the prohibition on justices of the Supreme Court from exercising any appointing power. If, then, the legislature had desired to return to the old system, they could have easily modified chapter 859 of 1871, accordingly; that is, provided such appointment of a county officer be allowed by the other parts of the Constitution.

I do not think that a person thus appointed is like a referee. A

referee is merely an officer of the court in which he is appointed. The person commissioned by the chancellor was not an officer of the Court of Chancery. He was the judge of another court, to act as surrogate, with jurisdiction of cases not belonging to equity. (*Colton* v. *Ross*, 2 Paige, 396.)

For these reasons, I think the order should be reversed.

Present — LEARNED, P. J., BOARDMAN and BOCKES, JJ.

Order affirmed, with ten dollars costs and printing.